**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN J. D'ANGELO | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  21-4813 |
| | : | |
| VANGUARD GROUP, INC. | : | |

## MEMORANDUM

KEARNEY, J.                                                    November 10, 2022

A fifty-year-old employee can allege his new boss fired him because of his age when the employer hires a substantially younger employee to perform the same job. But the terminated employee needs to eventually adduce evidence of the employer's discriminatory animus based upon age. Judges will test allegations for supporting facts before summoning citizens for a jury. Allegations without evidence creating issues of fact are not triable.

We today evaluate evidence following allegations and speculations arising from Vanguard Group, Inc.'s decision to fire long-time employee John J. D'Angelo: a few months after his fiftieth birthday; weeks after his new boss mentioned his possible retirement date in their first meeting; and, days after Vanguard completed an extensive investigation of repeatedly demonstrated claims questioning Mr. D'Angelo's professional conduct. Vanguard hired a substantially younger replacement three months later. Our issue is whether Vanguard fired him for illegal reasons.

Mr. D'Angelo fails to adduce evidence of Vanguard's discriminatory animus after an extended discovery period. He instead chooses to argue a long-discarded causation standard and either cites facts harming his arguments or offers no facts. He then suggests we should not believe the Vanguard documented reasons from several co-workers. He offers no reason not to do so. We find no genuine issues of material fact based upon the adduced record nor evidence of discriminatory animus as a matter of law requiring we enter summary judgment for Vanguard.

I.    **Undisputed Facts**[1]

John J. D'Angelo. began working for Vanguard Group, Inc. as a twenty-four-year-old man in September 1995.[2] Twelve employees reported to Mr. D'Angelo in late 2020.[3] Mr. D'Angelo then served as a team leader of Vanguard's Production Readiness team, a team within one of three larger groups.[4] Mr. D'Angelo in turn reported to his direct supervisor, Pam Talarico.[5]

Vanguard installed forty-four-year-old Robert Whitesel as a senior manager in late 2020 responsible for leading Vanguard's Technology Research and Response Group.[6] Manager Talarico reported to Senior Manager Whitesel.[7] Senior Manager Whitesel served as the second-level manager for Mr. D'Angelo.

Senior Manager Whitesel began holding one-on-one meetings with individual employees within his reporting lines including Mr. D'Angelo when he became a senior manager.[8]  Mr. D'Angelo, then fifty years old, alleges Senior Manager Whitesel told him during their meeting:

- "I understand you just turned fifty";

- "Are you contemplating retirement, because you are retirement age"; and

- "I'm surprised you have children that old" in reference to Mr. D'Angelo's seventeen and nineteen-year-old children and, after Mr. D'Angelo told Senior Manager Whitesel he had a son in college, Senior Manager Whitesel expressed surprise "that [he] had a child that old" and commented "You don't look like you are old enough to have a nineteen or twenty year old."[9]

Mr. D'Angelo speculates Senior Manager Whitesel then "performed a secret calculation" to determine Mr. D'Angelo's retirement date.[10] The "secret calculation" is Vanguard's retirement policy to which Senior Manager Whitesel testified: when age plus years of service equal seventy-five, an employee is eligible for retirement benefits.[11] Senior Manager Whitesel swore he did not make a comment to Mr. D'Angelo regarding his eligibility for retirement, but conceded "I did do

some quick math, once he [Mr. D'Angelo] told me that he was 50 years old, and he shared he was at Vanguard for 26 years, that he was retirement eligible."[12]

### *Vanguard reviews an early February 2021 complaint about Mr. D'Angelo.*

Pregnant employee S.L. reported directly to Mr. D'Angelo.[13] She contacted Vanguard's "Crew Relations" department in early February 2021.[14] S.L. reported Mr. D'Angelo treated her differently because she took childcare leave and because she anticipated taking maternity leave.[15] Vanguard's "Crew Relations Specialist" Jennifer Boschi reviewed S.L.'s complaint and then met with S.L. on February 3, 2021. Specialist Boschi took contemporaneous notes during her meeting with S.L. and kept the notes in an investigation file consistent with her practice.[16]

S.L. told Specialist Boschi, among other things: S.L. felt as if taking childcare leave would "backfire on her"; when she told Mr. D'Angelo she had to take childcare leave in November and December 2020, he responded in a team meeting, she "might as well take the rest of this year off or next year off"; she considered "quitting multiple times"; and felt she "was going to be pushed out because she isn't going to be able to tolerate this type of behavior."[17] Mr. D'Angelo denies making these reported statements.[18]

S.L. provided Mr. Boschi with additional examples of conduct by Mr. D'Angelo she objected to later on February 3 and the next day, February 4.[19] Specialist Boschi met again with S.L. on February 18, 2021 where S.L. reported Mr. D'Angelo said to her: "You are a pain in my neck," a comment S.L. believed unprofessional.[20]

### *Specialist Boschi investigates S.L.'s complaints.*

Specialist Boschi investigated S.L.'s complaints by speaking with other members of Mr. D'Angelo's team.[21] Specialist Boschi emailed Senior Manager Whitesel on March 4, 2021 to introduce herself, notify him of S.L.'s reported concern regarding Mr. D'Angelo, and schedule a

meeting "to put the situation on your radar."[22] Mr. D'Angelo does not dispute Specialist Boschi sent her March 4, 2021 email to Senior Manager Whitesel; he instead concludes – again with no evidence – the email is "untruthful and manufactured to justify disparate treatment."[23]

Specialist Boschi told Senior Manager Whitesel of her approach and plan to further investigate.[24] Specialist Boschi interviewed seven employees from March 8 to March 11, 2021 who reported, or had recently reported, to Mr. D'Angelo.[25] Specialist Boschi, again consistent with her practice, took notes of the interviews. Six of the seven interviewed employees reported inappropriate conduct or comments by Mr. D'Angelo including: making an inappropriate comment about an employee who had eye surgery by joking he would make a "pirate noise" because the employee would be wearing an eye patch; creating a "toxic environment"; starting "weird rumors" he believed funny but the employee did not think should have been made by a team leader; making jokes at the expense of other employees; making inappropriate comments about his ex-wife and their relationship; commenting some employees should "shut up"; making inappropriate comments about his personal relationships; creating a hostile environment causing one employee to be afraid of retaliation; appearing unannounced and uninvited to the home of one of his direct reports; general unprofessional conduct; commenting about an Indian employee's food brought to an event because of the smell of curry; and commenting on the pronunciation of Indian employees' names and of employees of different origin.[26] Specialist Boschi also reviewed Mr. D'Angelo's employment history at Vanguard and found documents confirming he violated Vanguard's Fair Treatment and Professional Conduct policies in 2002, 2011, 2012, 2014, and 2015.[27]

***Specialist Boschi summarizes her findings to Senior Manager Whitesel on March 17 and
then interviews Manager Talarico and Mr. D'Angelo.***

Specialist Boschi summarized her interviews with crew members with Senior Manager
Whitesel on March 17, 2021.[28] She reported several instances where Mr. D'Angelo violated
Vanguard's Fair Treatment and Professional Conduct policies.[29] Specialist Boschi had not yet
interviewed Mr. D'Angelo's direct supervisor Manager Talarico or Mr. D'Angelo.

Specialist Boschi interviewed Manager Talarico on March 18, 2021.[30] Manager Talarico
had no role in the investigation and did not know who Specialist Boschi interviewed as part of the
investigation.[31]

Specialist Boschi interviewed Mr. D'Angelo a day later.[32] Mr. D'Angelo denied all
allegations made by the crew members.[33] Vanguard put Mr. D'Angelo on administrative leave
after his interview with Specialist Boschi on March 19, 2021.[34]

***Vanguard fires Mr. D'Angelo.***

Specialist Boschi swore she evaluated all the gathered data and found the crew members
more credible than Mr. D'Angelo.[35] Specialist Boschi swore she found a pattern in Mr. D'Angelo's
treatment of the six people she interviewed but Mr. D'Angelo did not agree. She could not find
Mr. D'Angelo believable.[36]

Specialist Boschi spoke with Senior Manager Whitesel on March 19, 2021 and
recommended terminating Mr. D'Angelo for violating Vanguard's Fair Treatment and
Professional Conduct policies.[37] Senior Manager Whitesel agreed and recommended Mr.
D'Angelo's termination based on Specialist Boschi's findings.[38] Specialist Boschi prepared a
Crew Relations Termination Record on March 19, 2021 documenting the "management business
justification" for Mr. D'Angelo's termination.[39]

There is no dispute Senior Manager Whitesel alone decided to fire Mr. D'Angelo.[40] Senior Manager Whitesel swore he fired Mr. D'Angelo because Specialist Boschi "completed an investigation that had identified several violations of both our personal conduct and fair treatment policies that paired with his performance history in several instances and in his … previous roles, similar behaviors led to the decision to terminate his employment."[41]

### Manager Talarico hires a younger man to fill Mr. D'Angelo's position.

Manager Talarico posted an opening for the Production Team Lead position on March 23, 2021.[42] Manager Talarico hired twenty-seven-year-old Arthur Forbes three months later for the Production Team Lead position, replacing Mr. D'Angelo.[43] Manager Talarico alone decided to hire Mr. Forbes.[44]

## II.    Mr. D'Angelo sues Vanguard leading to further disclosures.

Mr. D'Angelo filed a counseled charge of discrimination with the Equal Employment Opportunity Commission on June 29, 2021 alleging Vanguard, Senior Manager Whitesel, and Specialist Boschi discriminated against him based on his age.[45]  The EEOC issued a right-to-sue letter on August 3, 2021.[46] Mr. D'Angelo then sued Vanguard alleging age-based discrimination under the Age Discrimination in Employment Act.[47]

The parties' extended discovery included the depositions of the seven crew members interviewed by Specialist Boschi. Each of the crew members swore the reports they made to Specialist Boschi as contained in her interview notes are accurate:

- Z.M., a former direct report, swore he told Specialist Boschi his time working for Mr. D'Angelo "was a toxic environment";[48]

- K.D., a former direct report, swore she told Specialist Boschi about an "uncomfortable phone call" Mr. D'Angelo made to her about changing the paint color in her kitchen because it is ugly, which "really threw [her] for a loop, because [she] had just either put a house under contract, or closed on it" and without having told Mr. D'Angelo her address or the address of the new house she bought, he "had

looked up the house, found photos of the interior, and thought it was okay to call me and comment on it." K.D. told Specialist Boschi she viewed this as a possible threat Mr. D'Angelo knew where she lived and "it felt like a credible threat to [her] privacy …"[49] K.D. also confirmed the accuracy of Specialist Boschi's notes of their interview, including Mr. D'Angelo "played games with everyone," started "weird rumors" he thought a joke or in fun but, in K.D.'s opinion, should not have been made by a leader, made jokes at other crew member's expense, implied another crew member "talked too much", and shared personal information about his ex-wife; [50]

- A.R., a former direct report, confirmed the accuracy of Specialist Boschi's notes of their interview in which A.R. reported: she spoke with a therapist about her experience with Mr. D'Angelo; she was afraid of retaliation by Mr. D'Angelo; the team had a "hostile" environment; Mr. D'Angelo messaged her by saying he wished another crew member would "just shut up"; Mr. D'Angelo left a personal improvement plan of another crew member on his desk for anyone to see; at a team picnic at his home Mr. D'Angelo commented, "you don't want to know what's happened in that hot tub" and told her he had sexual relations with another crew member on the sofa in his house and she should not sit there; showed photos and told stories of "getting black out drunk and vomiting" and other bodily functions in the shower; and spoke about personal issues involving his ex-wife;[51] A.R. also reported Mr. D'Angelo showed up unannounced and uninvited to her home making her uncomfortable;[52]

- C.G. confirmed the accuracy of Specialist Boschi's notes of their interview where C.G. reported: some crew members took an anonymous survey giving negative feedback on Mr. D'Angelo, he pulled C.G. aside to ask why he received the feedback making her feel uncomfortable, she felt like an outcast, Mr. D'Angelo was "very dismissive" of her, he would not provide her feedback, and commented to the entire team and other leaders C.G. should not lead a team the following year;[53]

- M.Z. swore to examples of Mr. D'Angelo's unprofessional behavior relayed to Specialist Boschi including him not telling her of team meetings, a game he played to allow crew members to leave early, and confirmed the accuracy of Specialist Boschi's notes of their interview where M.Z. reported Mr. D'Angelo "was not always professional", asked her about her personal life, and embarrassed other crew members;[54]

- M.J. swore Mr. D'Angelo made comments about her Indian food with a smell of curry, not learning how to pronounce Indian names, comments about people of different origin, demeaning and condescending jokes, showed a photo of himself in a bathing suit, called his ex-wife during a meeting, and a joke about another crew member taking medical leave to care for a sick husband;[55]

- M.R. did not express concerns regarding Mr. D'Angelo to Specialist Boschi.[56]

Mr. D'Angelo's counsel examined each of these crew members and had every opportunity over several months of discovery to test the bases of the information they communicated to Specialist Boschi. Six of the seven crew members reported instances of unprofessional conduct and each confirmed the accuracy of Specialist Boschi's interview notes. Only one of the interviewed persons (M.R.) did not have a concern. Mr. D'Angelo does not dispute the crew members made these statements; he disputes the credibility of the statements.

## III.   Analysis

Vanguard now moves for summary judgment on Mr. D'Angelo's single claim for age discrimination arguing: (1) there is no direct evidence of age discrimination; and (2) there is no circumstantial evidence of age discrimination under the *McDonnell Douglas*[57] burden-shifting framework because (a) Mr. D'Angelo failed to present evidence of a prima facie case of age discrimination; (b) even if Mr. D'Angelo established a prima facie case of age discrimination, Vanguard had a legitimate, non-discriminatory reason for his termination; and (c) Mr. D'Angelo failed to show pretext. [58]

Mr. D'Angelo responds with a hearsay objection to Specialist Boschi's interview notes,[59] conjecture about a conspiracy to terminate him because of his age without record evidence, and challenges to the method and accuracy of Specialist Boschi's investigation and the company's business decision. But he fails to identify facts creating an issue of material fact on his ultimate burden of proving age-based discrimination.

Our Court of Appeals long ago defined the issue for our review in employment discrimination cases: we focus solely on whether the employer acted with discriminatory animus.[60] "It is of no consequence to this analysis whether an employer's decision to take adverse action

8

against an employee is 'wise, shred, prudent, [] competent[,]' or grounded in a mistaken or patently wrong belief about an employee, the employee's intent, or the employee's conduct."[61] We "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [law] does not interfere."[62]

### A. Mr. D'Angelo fails to adduce evidence his age is the "but for" cause for his firing.

Mr. D'Angelo claims Vanguard fired him because of his age. The Age Discrimination Act of 1967 ("ADEA")[63] – like its older first cousin Title VII of the Civil Rights Act of 1964 prohibiting discrimination in employment based on race, color, religion, sex, or national origin[64] – prohibits discrimination in employment based on age. Congress, through the Age Discrimination in Employment Act, made it unlawful for an employer to discriminate against an individual over the age of forty "with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age*."[65]

Title VII and ADEA, however, are materially different in the burden of persuasion required of an employee claiming age-based animus in his employer's adverse action. And counsel knows this standard set by the Supreme Court thirteen years ago in *Gross v. FBL Financial Services*.[66] The Court in *Gross* analyzed Title VII and ADEA and instructed an employee claiming age discrimination under ADEA "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[67] After the Court's decision in *Gross*, an employee claiming age-based disparate treatment in violation of ADEA must prove age is the "but-for" cause of the adverse employment action.[68] The Court in *Gross* reasoned the "ordinary meaning" of the Act's "because of" language requires age to be "***the***

'*reason*' that the employer decided to act."[69] Mr. D'Angelo, as a matter of law, "retains the burden of persuasion to establish his age is the '***but for***' cause' of Vanguard's decision to fire him.[70]

Mr. D'Angelo believes he need only show his age "played a role" in Vanguard's decision and  the "sole cause" standard (as he terms it) is too stringent.[71] Mr. D'Angelo cites a decision from our Court of Appeals in support of the "played a role" causation standard. But the authority he cites for this proposition pre-dates *Gross* and is no longer the law (for the past thirteen years).[72] We apply the but-for causation standard of *Gross* to his claims.

Under *Gross*, Mr. D'Angelo must prove by a preponderance of the evidence his age is the "but-for" cause of Vanguard's decision to fire him. Mr. D'Angelo may meet his burden of showing by a preponderance of the evidence his age is the "but-for" cause of his termination in two ways: (1) direct evidence; or (2) circumstantial evidence under the *McDonnell Douglas* burden-shifting framework showing Vanguard's proffered reason for his termination is pretext for unlawful age-based discrimination.[73]

Mr. D'Angelo argues he adduces both direct and circumstantial evidence of discrimination.[74]

### 1.    Mr. D'Angelo does not adduce direct evidence of discrimination.

An employee's direct evidence of discrimination "must be sufficient on its own to allow a factfinder to determine that age was the but-for cause of the termination decision."[75] Our Court of Appeals describes this burden as a "high hurdle" demonstrating "'*without inference or presumption*' that age discrimination was the but-for cause of termination."[76] After the Supreme Court's decision in *Gross*, direct evidence must show the employer's decision "would not have occurred without improper consideration of age."[77]

Mr. D'Angelo does not identify the direct evidence he believes demonstrates – without inference or presumption – his age is the but-for cause of his termination. He simply has an argument heading in his memoranda there is direct evidence of discrimination without telling us what he believes constitutes the direct evidence.[78]

We will assume Mr. D'Angelo contends Senior Manager Whitesel's age and retirement eligibility comments during their one-on-one meeting is direct evidence of age discrimination.[79] These comments on their own must show Mr. D'Angelo's age is the but-for cause of his termination for Mr. D'Angelo to proceed to trial.

"Where a plaintiff relies on comments made by the decision maker as direct evidence of discrimination, it is vital that the statements relate to the decisional process in order to establish that the adverse decision was made because of the plaintiff's" membership in a protected class."[80] Direct evidence of age-based discrimination "'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision."[81]

Mr. D'Angelo does not meet his causation burden to show discrimination by direct evidence. Senior Manager Whitesel's comments do not reflect animus against older workers and Mr. D'Angelo does not explain how the comments about having "just turned fifty," a question about contemplating retirement, and a comment about Mr. D'Angelo being the parent of teenaged and college-aged children reflect age-based discriminatory animus in his termination. Our Court of Appeals and colleagues reviewed similar comments and found they did not offer legally sufficient direct evidence of age discrimination:

- "too old to change industries";[82]

- questions about retirement;[83]

- "I have empathy for people who are getting older" in reference to terminating an older employee;[84]

- supervisor's comments employee "probably had a 'fat 401(k) and a pension,'" the employer's business "is changing and it needs new younger faces," and inquiries about the timing of retirement;[85] and

- supervisor's preference in hiring "young college kids from universities because they are … smarter and more educated"[86]

Senior Manager Whitesel's comments do not concern the decision-making process and he made them approximately six weeks before he decided to fire Mr. D'Angelo. "Direct evidence may take the form of a workplace policy that is discriminatory on its face, or statements by decision makers that reflect the alleged animus and bear squarely on the adverse employment decision."[87] Direct evidence does not include stray remarks, even by a decisionmaker, made in a context unrelated to the employment decision, particularly if they are remote in time.[88]

Mr. D'Angelo points to comments made by Senior Manager Whitesel on January 26, 2021. He then attempts to connect the January 26, 2021 comments to the concern reported by pregnant employee S.L. in early February 2021 to Specialist Boschi; the investigation Specialist Boschi started in March 2021; and Senior Manager Whitesel's decision to terminate Mr. D'Angelo two months later in March 2021 after Specialist Boschi reported her findings. The comments, as a matter of law, do not meet the "high hurdle" of demonstrating direct evidence "*without inference or presumption*" age is the but-for cause of Mr. D'Angelo's termination.

      **2.**    **Mr. D'Angelo fails to meet his burden under the *McDonnell Douglas* burden-shifting analysis of pretextual termination.**

Absent direct evidence of age discrimination, Mr. D'Angelo may offer indirect (or circumstantial evidence) of discrimination through the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[89] Under the three-part framework of *McDonnell Douglas*, Mr. D'Angelo initially bears the burden of demonstrating a prima facie case of

discrimination by showing: (1) he is at least forty years old; (2) Vanguard took an adverse action against him; (3) he was qualified for the position; and (4) Vanguard replaced him with another employee sufficiently younger to support an inference of discriminatory animus.[90] "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case."[91]

If Mr. D'Angelo adduces evidence of a prima facie case of age discrimination, the burden shifts to Vanguard to offer a legitimate, non-discriminatory reason for his termination.[92] This is a "relatively light" burden and is satisfied if Vanguard "provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."[93]

If Vanguard offers a legitimate, non-discriminatory reason for Mr. D'Angelo's termination, the burden of production shifts back to Mr. D'Angelo to adduce evidence from which a factfinder could reasonably infer Vanguard's proffered reason for his termination is a pretext for discrimination.[94] To show pretext, Mr. D'Angelo "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Vanguard's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Vanguard's] action."[95] If Mr. D'Angelo's evidence relates to the credibility of Vanguard's proffered justification he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Vanguard's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[96]

Vanguard argues Mr. D'Angelo (a) fails to make a prima facie case of age discrimination; (b) even if he makes a prima facie case, it had a legitimate, non-discriminatory reasons for

termination; and (c) he cannot show Vanguard's legitimate, non-discriminatory reason for his termination is pretext for age discrimination.

          **a.**      **Mr. D'Angelo satisfies a prima facie case of age discrimination.**

Vanguard concedes Mr. D'Angelo meets the first three elements of the prima facie case: he is over forty-years-old; Vanguard terminated his employment; and, he is qualified for the position for purposes of its motion. Vanguard challenges only the fourth element: replacement with another employee sufficiently younger to support an inference of discriminatory animus.

There is no dispute Vanguard hired twenty-seven year old Mr. Forbes to replace Mr. D'Angelo. Vanguard argues Mr. Forbes' age alone does not support an inference of discrimination. Vanguard argues Manager Talarico made the decision to hire Mr. Forbes but Senior Manager Whitesel made the decision to terminate Mr. D'Angelo's employment based on Specialist Boschi's investigation. Because there are two different decisionmakers – Manager Talarico in the hiring of Mr. Forbes and Senior Manager Whitesel in the termination of Mr. D'Angelo – hiring the younger Mr. Forbes does not suggest an inference of age discrimination.

Vanguard does not cite authority to support its argument a different hiring manager not involved in Mr. D'Angelo's termination decision does not suggest an inference of age discrimination where the new hire is sufficiently younger than the terminated older employee. It cites one case, *Carroll v. Guardant Health, Inc.*, an age discrimination case we decided last year.[97] We observed our Court of Appeals recently explained the fourth factor of the prima facie case is sometimes phrased as the "adverse action occurred under circumstances that create an inference that plaintiff's age was a motivating factor" and sometimes phrased as to require plaintiff to show the plaintiff "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[98] Our Court of Appeals explained replacement

by another employee sufficiently younger "is just one way to establish the fourth element" of the prima facie case permitting an inference of age discrimination but not the only way.[99] In *Carroll*, the employer replaced the plaintiff with a younger employee. We found the plaintiff established a prima facie case of age discrimination and, after lengthy analysis, concluded fact issues precluded summary judgment on the issue of pretext in the age discrimination claim presented under those facts.

Our analysis in *Carroll* does not help Vanguard or support its argument two different decision makers – Manager Talarico and Senior Manager Whitesel – cannot support an inference of age discrimination when it is undisputed Vanguard hired the sufficiently younger Mr. Forbes. As we explained in *Carroll*, a plaintiff's burden at the prima facie state "is low and may be satisfied by presenting facts sufficient to show [he] was in fact replaced with a sufficiently younger employee."[100]

Mr. D'Angelo shows a prima facie case of age discrimination. We move to the next steps in the *McDonnell Douglas* analysis.

### b.    Mr. D'Angelo fails to demonstrate pretext.

At the second step of the *McDonnell Douglas* analysis, Vanguard must proffer a legitimate, non-discriminatory reason for terminating Mr. D'Angelo's employment. Vanguard does so: it fired Mr. D'Angelo for violating the company's Fair Treatment and Professional Conduct policies.

The burden then shifts to Mr. D'Angelo to point to some evidence in the record to demonstrate Vanguard's reason is a pretext for age discrimination. He must produce some evidence to either disbelieve Vanguard's reason for terminating him or believe an "invidious discriminatory reason" is more likely than not a motivating or determinative cause of his termination. If Mr. D'Angelo's evidence relates to the credibility of Vanguard's proffered

justification he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Vanguard's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[101] To show pretext, Mr. D'Angelo is required to produce "documents or deposition testimony at odds with defendant's proffered explanation."[102]

And here is where Mr. D'Angelo's case falls to pieces. Mr. D'Angelo advances a theory Senior Manager Whitesel and Specialist Boschi worked together to terminate him. There is not a single piece of evidence to support this theory. Instead, Mr. D'Angelo believes Specialist Boschi conducted a flawed, false, and manufactured investigation somehow manipulated by Senior Manager Whitesel days after the age and retirement related comments and the two secretly conspired to terminate him before Specialist Boschi completed her investigation and some two months after Senior Manager Whitesel's "age-based" comments.

Mr. D'Angelo also argues Vanguard treated him differently than similarly situated employees. Who are the similarly situated employees? None other than Senior Manager Whitesel and Manager Talarico, both of whom – according to Mr. D'Angelo – were the subjects of reported discrimination and retaliation. Other than the current litigation itself, there is nothing in the record evidencing complaints against Senior Manager Whitesel or Manager Talarico for age-based discrimination or retaliation or any other type of discrimination prohibited by the federal civil rights statutes or any federal or state law.[103] We can only conclude Mr. D'Angelo's counsel is reaching with this type of misstatement in a failed hope to meet his burden of showing age-based discriminatory animus by Senior Manager Whitesel.[104] But he cannot do so. He needs evidence.

Mr. D'Angelo's effort to survive summary judgment is a convoluted response based entirely on mischaracterizations unsupported by the record. There is no dispute crew member S.L.

reported to Vanguard's Crew Relations department a concern she had about Mr. D'Angelo. Vanguard assigned S.L.'s complaint to Specialist Boschi in early February 2021.

As is typical of human resources departments in companies across the country, Specialist Boschi opened an investigation into S.L.'s complaint. Specialist Boschi sent Senior Manager Whitesel an email on March 4, 2021 introducing herself and notifying him she "is looking into a situation concerning someone in his reporting line" and asked to meet with him. Mr. D'Angelo does not dispute Specialist Boschi sent this email; he disputes the content as "untruthful and manufactured to justify disparate treatment" based solely on his own conjecture.

Senior Manager Whitesel and Specialist Boschi generally discussed her approach to the investigation and the two agreed to meet once she interviewed some of the crew members, current and former, on Mr. D'Angelo's team. Specialist Boschi interviewed seven crew members between March 8 and March 11, 2021. Specialist Boschi took the not-so-unusual step of taking notes of her interviews. She checked the company's case history on Mr. D'Angelo and found several earlier violations of the Fair Treatment and Professional Conduct policies.

Specialist Boschi interviewed Manager Talarico and Mr. D'Angelo on March 18 and March 19, 2021, respectively. There is no dispute Manager Talarico had no involvement in the decision to terminate Mr. D'Angelo. Specialist Boschi assessed the reports from the crew members she interviewed – and recognized one of the seven employees had no complaint with Mr. D'Angelo – and assessed her interview with Mr. D'Angelo and concluded she believed the crew members. Specialist Boschi provided Senior Manager Whitesel a written termination justification on March 19, 2021. Senior Manager Whitesel agreed with Specialist Boschi's findings and recommended termination.

Mr. D'Angelo disagrees with the way in which Specialist Boschi conducted the investigation but that does not demonstrate pretext. He must show more than a flawed investigation to meet his burden of production on pretext.[105] Mr. D'Angelo believes all of this is a conspiracy to terminate him because forty-four-year-old Senior Manager Whitesel made references to Mr. D'Angelo turning fifty and retirement eligible two months earlier. And Mr. D'Angelo asks a factfinder to reasonably find Vanguard's reason for firing him is a pretext for age discrimination even though: S.L. came forward with her initial report  concerning Mr. D'Angelo's treatment of her for childcare obligations and an impending maternity leave; there is no evidence or explanation by Mr. D'Angelo connecting S.L.'s report to Senior Manager Whitesel; all evidence shows Specialist Boschi only began investigating after S.L.'s complaint; of Specialist Boschi's interviews of seven direct reports of Mr. D'Angelo, six reported unprofessional conduct; and, a complete absence of evidence Senior Manager Whitesel initiated, prompted, suggested, conspired, or otherwise directed the investigation.

According to Mr. D'Angelo, his pretextual termination is evidenced by Senior Manager Whitesel and Specialist Boschi deciding to fire Mr. D'Angelo **before** Specialist Boschi interviewed Manager Talarico and Mr. D'Angelo. He supports this speculation with a "smoking gun" email trail :[106]

- A March 10, 2014 email from Specialist Boschi to Amy Fritsky (Specialist Boschi's supervisor) asking for time to talk to "run what I've found so far in my investigation of John D'Angelo … and am thinking we may need to put him on leave while I complete the investigation."[107] Decision maker Senior Manager Whitesel is not copied on the email. And Mr. D'Angelo's counsel chose not to depose Ms. Fritsky.

- A March 15, 2021 email from Specialist Boschi to Lari Hudson (we have no idea who Ms. Hudson is) advising she concluded her investigation and wanted "run some things by you."[108] Senior Manager Whitesel is not copied on the email.

- A March 18, 2021 email from Specialist Boschi to Christian Deleo (we have no idea who Mr. Deleo is) asking Mr. Deleo if he had time to "sit in on" her

"investigation meeting" with Mr. D'Angelo.[109] Senior Manager Whitesel is not copied on the email and the email says nothing about firing Mr. D'Angelo.

- A March 18, 2021 email from Specialist Boschi to Lisa Smith (no idea who Ms. Smith is) notifying Ms. Smith of a scheduling a meeting with Mr. D'Angelo and checking to make sure Ms. Smith did not know Mr. D'Angelo personally.[110] Senior Manager Whitesel is not copied on the email.

- A March 18, 2021 email from Specialist Boschi to Ms. Hudson advising she is working with Senior Manager Whitesel regarding Mr. D'Angelo and she (Specialist Boschi) "need to speak with" Mr. D'Angelo, "place him on leave, and then the plan is to move to termination."[111]

Mr. D'Angelo "smoking gun" email chain to show pretext for age-based discrimination does not help him. Even if these emails show Senior Manager Whitesel and Specialist Boschi made the decision – although Mr. D'Angelo concedes the termination decision rested solely on Senior Manager Whitesel – sometime before interviewing Manager Talarico or Mr. D'Angelo, this is not pretext for age-based animus. Specialist Boschi completed her interviews of the seven crew members by March 11 and the reports made by six of them constituted reason for Mr. D'Angelo's termination under Vanguard's policies.

Mr. D'Angelo fails to meet his burden of providing evidence to either disbelieve Vanguard's reason for terminating him or believe an invidious discriminatory reason more likely than not motivated or determined the cause of his termination. Mr. D'Angelo challenges the credibility of Specialist Boschi and the crew members she interviewed (except of course the credibility of the one crew member who had no problem with Mr. D'Angelo) but he must point to evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Vanguard's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" He failed to meet his burden. We enter judgment in favor of Vanguard.

## IV.    Conclusion

Allegations and wild speculations are not evidence. Reliance on long-discarded standards does not withstand judicial scrutiny. Mr. D'Angelo adduced no evidence allowing us to find a genuine issue of material fact. He presents no legal basis for his theories based on his counsel's speculations. We require evidence. We find no genuine issue of material fact and judgment must be entered as a matter of law in Vanguard's favor.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. Vanguard Group, Inc. filed its SUMF, Motion, brief in support of summary judgment, and Appendix at ECF Doc. Nos. 23, 23–1, 23–2, and 23–3. Mr. D'Angelo filed his response brief, response to Vanguard's SUMF, and supplemental Appendix at ECF Doc. Nos. 33, 34, 35, 36, and 37.

[2] ECF Doc. No. 23–2, Vanguard SUMF ¶ 8.

[3] ECF Doc. No. 33–3, Appx. 228A, Declaration of J. D'Angelo at ¶ 4.

[4] ECF Doc. No. 23–2, Vanguard SUMF ¶¶ 9–10; ECF Doc. No. 33–3, Appx. 228A, Declaration of J. D'Angelo at ¶¶ 3–5.

[5] ECF Doc. No. 23–2, Vanguard SUMF ¶ 11.

[6] ECF Doc. No. 23-3, Appendix ("Appx.") 67A, N.T. J. D'Angelo at 14; Appx. 135A, N.T. R. Whitesel at 8.

[7] ECF Doc. No. 23–2, Vanguard SUMF ¶ 16. Vanguard's assertion at paragraph 16 is straightforward: Senior Manager Whitesel started as Mr. D'Angelo's second-level manager in December 2020. Mr. D'Angelo disputes Senior Manager Whitesel's December 2020 start date and disagrees with "labeling" Senior Manager Whitesel a "second-level manager." *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 16. If Mr. D'Angelo disputes this assertion, Federal Rule of Civil Procedure 56 requires him to cite to the record to show a genuine dispute of material fact. His cite fails to support his denial. He disputes labelling Senior Manager Whitesel as his "second-level manager," but swore in his Declaration Senior Manager Whitesel "was the ***new Senior Manager*** of the department in which I worked and became my supervisor around the same time period when I first met him on January 26, 2021." (emphasis added). ECF Doc. No. 33–3, Declaration ¶ 13. At the same time, he swears Pam Talarico served as his "direct supervisor," conceding Senior Manager Whitesel is a second-level supervisor. *Id.*, Declaration ¶¶ 14, 15. He also swore Senior Manager Whitesel moved into the position of "skip level manager," to replace another senior manager who left the position. ECF Doc. No. 36–2, Appx. 698, N.T. J. D'Angelo at 211–12.

Mr. D'Angelo cites no record evidence to challenge Senior Manager Whitesel's sworn testimony he began in his new position in December 2020. Mr. D'Angelo instead cites Senior Manager Whitesel's sworn testimony he began leading the Technology Research and Response Group in December 2020. ECF Doc. No. 34–2, Appx. 404A, N.T. R. Whitesel at 15. Mr. D'Angelo does not provide us with record evidence to create a fact issue. He then takes three pages in his memoranda to dispute Vanguard's reasons for his termination, having nothing to do with the assertion at Vanguard's asserted fact at paragraph 16. This type of disjointed and arguably misleading advocacy can be found throughout Mr. D'Angelo's memoranda. He offers little or no supporting evidence. Conclusory statements lacking merit do not suffice in courtrooms.

[8] ECF Doc. No. 23–2, Vanguard SUMF ¶ 18. Vanguard contends the meeting between the two men occurred on December 18, 2020, citing a calendar event from Senior Manager Whitesel to Mr. D'Angelo showing a December 18, 2020 meeting between the two men with the subject line: "Rob/John Introduction." ECF Doc. No. 23–3, Appx. 168A. Mr. D'Angelo contends he did not meet with Senior Manager Whitesel until January 26, 2021. ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 19. Mr. D'Angelo contends an unidentified person at an unidentified time "rescheduled" the December 18, 2020 meeting to January 26, 2021, suggesting the December 18, 2020 meeting never occurred. *Id.* Mr. D'Angelo again adduces no evidence to support a rescheduled meeting. Vanguard replies Mr. D'Angelo's insistence his first meeting with Senior Manager Whitesel did not occur until January 26, 2021 is an attempt to show temporal proximity between the meeting and his termination in March 2021. Vanguard contends the date of the meeting is not a material fact. *See* ECF Doc. No. 38 at 6. We agree.

[9] ECF Doc. No. 23–2, Vanguard SUMF ¶ 20. Senior Manager Whitesel swore he did not ask Mr. D'Angelo his age. ECF Doc. No. 34–2, Appx. 433, N.T. R. Whitesel at 131–32. For purposes of its motion, Vanguard does not deny Mr. D'Angelo's account of his meeting with Senior Manager Whitesel. ECF Doc. No. 23–2, Vanguard SUMF ¶ 20, n. 3.

[10] ECF Doc. No. 33–1, D'Angelo response to SUMF ¶¶ 19, 45.

[11] ECF Doc. No. 34–2, Appx. 434-35, N.T. R. Whitesel at 134–38.

[12] *Id.*, Appx. 434, N.T. R. Whitesel at 134. Mr. D'Angelo did not develop his "secret calculation" theory in discovery including obtaining Vanguard's retirement plan.

[13] ECF Doc. No. 23–2, Vanguard SUMF ¶ 22.

[14] Vanguard refers to its employees as crew members and its human resources department as "Crew Relations." ECF Doc. No. 23–2, Vanguard SUMF ¶ 22. Mr. D'Angelo denies this asserted fact but fails to cite record evidence. He does not appear to dispute the fact S.L. contacted Vanguard's Crew Relations department in early February 2021; he disputes the truth of S.L.'s complaint as "suspect" and "lacks credibility" in an effort to manufacture a factual dispute. *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 22.

[15] ECF Doc. No. 23–2, Vanguard SUMF ¶ 23.

[16] *Id.*, Vanguard SUMF ¶ 24. Mr. D'Angelo does not dispute Specialist Boschi took notes of her meeting with S.L. consistent with her practice. He objects to Specialist Boschi's notes as hearsay. *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 24. We address this meritless argument in our analysis.

[17] ECF Doc. No. 23–2, Vanguard SUMF ¶ 23.

[18] ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 23.

[19] ECF Doc. No. 23–2, Vanguard SUMF ¶ 25.  Mr. D'Angelo again does not deny S.L. emailed Specialist Boschi with additional examples of his conduct she believed unprofessional; he denies S.L.'s allegations and challenges S.L.'s truthfulness. *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 25.

[20] ECF Doc. No. 23–2, Vanguard SUMF ¶¶ 26–27.

[21] ECF Doc. No. 23–2, Vanguard SUMF ¶ 28.

Vanguard's Fair Treatment Policy provides in its overview: "Through this policy, Vanguard reaffirms its commitment to fair treatment of all crew. Vanguard strives to create and maintain a work environment that is free from discrimination, prejudice and bias, and in which everyone is treated with dignity, decency, and respect. Crew members should be able to work and interact with others in a safe and courteous atmosphere. As part of our commitment to fair treatment, Vanguard prohibits all forms of discrimination, harassment, and retaliation as outlined below. Refer to related content in the Unfair Treatment of Others section of the Professional Conduct Policy." ECF Doc. No. 23–3, Appx. 157A.

Vanguard's Professional Conduct Policy contains a section on "unprofessional actions and behavior" providing: "Crews are expected to conduct themselves in a professional manner at all times. This includes in-person, online, or over-the-phone interactions or other interactions using Vanguard's systems. Behaving in any way, or treating clients, any outside third party, or fellow crew members in a manner that is malicious, obscene, offensive, threatening, or intimidating, or that might constitute harassment or bullying, violates this policy." ECF Doc. No. 23–3, Appx. 154A.

[22] ECF Doc. No. 23–2, Vanguard SUMF ¶ 29.

[23] ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 29.

[24] ECF Doc. No. 23–2, Vanguard SUMF ¶¶ 30–32.

[25] *Id.*, Vanguard SUMF ¶ 35. Mr. D'Angelo admits Specialist Boschi interviewed seven employees but attacks Specialist Boschi's interview methods to show she somehow rigged her investigation and ignored favorable statements by Mr. D'Angelo's direct reports. *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 35. Even if true, Mr. D'Angelo does not explain how Specialist Boschi's alleged flawed investigation methods had anything to do with his termination because he

swears Specialist Boschi "had zero say in the decision" to terminate him and Senior Manager Whitesel "was 100% behind the decision to terminate" him. *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶ 33. Mr. D'Angelo makes wild accusations Senior Manager Whitesel and Specialist Boschi had undocumented communications during the investigation, suggesting Senior Manager Whitesel somehow directed or manipulated the flawed investigation. But the record evidence he cites does not support his bold conclusions. Mr. D'Angelo cites Senior Manager Whitesel swearing:

> Q.    Did [Specialist Boschi] tell  you how [the investigation] started? How she found [the complaint about Mr. D'Angelo's conduct], how she learned about it?
> …
> A.    Jennie [Boschi] had said that a crew member on John [D'Angelo's] team had reached out to her to report a concern with John.

> Q.    So, she [Specialist Boschi] notified you that one person contacted her to report a concern?

> A.    Correct.

> Q.    Did she tell you who that one person was?

> A.    No.

> Q.    Did she tell you what that concern was?

> A.    That's what we had previously talked about. The concern was that John was not treating people on his team fairly.

> Q.    So, she told you that this one person reported that other people of John's team weren't treating – weren't being treated fairly by John?

> A.    Yes.

> Q.    She didn't tell you that that person reached out to complain that she wasn't being provided with maternity leave or child care leave?

> A.    No. It was a generic conversation.

> Q.    What did you say to Jennie about this?

> A.    Well we, we generally discussed her approach to an investigation and agreed to, to meet again once she had a chance to interview some of the crew members on John's team and several former crew members.

> Q.    Do you have any knowledge related to whether Jennie Boschi actually ever did an investigation?

A.      Yes.

Q.      What's that knowledge?

A.      When Jennie shared her findings.

Q.      When you say "her findings," what does that mean? What did she share with you?

A.      She shared the outcome of the investigation and, at a high level, what she discussed as she was interviewing crew members.

Q.      *So you guys were in communication throughout the process when she was telling you that she was investigating; is that right*?

A.      *No. We had a conversation before her investigation began and then a meeting was scheduled, or an interaction was planned, at the conclusion of her interviewing crew members. So, that interaction didn't occur for another two weeks or so.*

ECF Doc. No. 34–2, Appx. 410, N.T. R. Whitesel at 37–40 (emphasis added). Mr. D'Angelo cites this testimony to argue Senior Manager Whitesel and Specialist Boschi "held communications never documented." This passage does not come close to supporting Mr. D'Angelo's assertion.

[26] ECF Doc. No. 23–2, Vanguard SUMF ¶¶ 36–62.

[27] *Id.*, Vanguard SUMF ¶¶ 63–64.

[28] *Id.*, Vanguard SUMF ¶ 66.

[29] *Id.*, Vanguard SUMF ¶ 66. Mr. D'Angelo denies this fact without citing the record, including: Specialist Boschi and Senior Manager Whitesel "did not discuss in any way whether [Ms.] Boschi had actually discovered violations of [Vanguard's] policies." Mr. D'Angelo also asserts Senior Manager Whitesel "admitted" Specialist Boschi's notes "included false statements about Mr. D'Angelo" citing Senior Manager Whitesel's deposition at ECF Doc. No. 34–2, Appx. 445A, N.T. R. Whitesel at 180–83. There is no evidence Senior Manager Whitesel made such an admission in the cited testimony or anywhere in the record.

[30] ECF Doc. No. 23–2, Vanguard SUMF ¶ 68.

[31] *Id.*, Vanguard SUMF ¶¶ 69–70.

[32] *Id.*, Vanguard SUMF ¶ 71.

[33] *Id.*, Vanguard SUMF ¶ 72.

---

[34] *Id.*, Vanguard SUMF ¶ 75; ECF Doc. No. 23–3, Appx. 74A, N.T. J. D'Angelo at 101.

[35] ECF Doc. No. 23–2, Vanguard SUMF ¶¶ 73–74.

[36] *Id.*

[37] *Id.*, Vanguard SUMF ¶ 79.

[38] *Id.*, Vanguard SUMF ¶ 80.

[39] ECF Doc. No. 23–3, Appx. 188A.

[40] ECF Doc. No. 23–2, Vanguard SUMF ¶ 80.

[41] *Id.*

[42] *Id.*, Vanguard SUMF ¶ 83.

[43] *Id.*, Vanguard SUMF ¶¶ 84–85.

[44] *Id.*, Vanguard SUMF ¶ 85. Mr. D'Angelo denies Manager Talarico is the sole decisionmaker in the hiring of Mr. Forbes, asserting Senior Manager Whitesel is the decisionmaker. With no record evidence supporting his conjecture Senior Manager Whitesel is the real decisionmaker, not Manager Talarico, Mr. D'Angelo asserts Manager Talarico: "could not hire [Mr.] Forbes until after [Mr.] Whitesel performed his own one-on-one interview" with Mr. Forbes; while Manager Talarico "was the person who actually informed [Mr.] Forbes that he was hired[,] the facts … clearly indicate that [Ms.] Talarico could not make this decision without the direct involvement of [Mr.] Whitesel"; and "it is reasonable under the circumstances for a jury to conclude that the same person who terminated [Mr.] D'Angelo, also made the decision to replace Mr. D'Angelo with an employee substantially younger and in his twenties." *See* ECF Doc. No. 33–1, D'Angelo response to SUMF ¶¶ 84–85.

There is no fact basis for this conjecture. Manager Talarico swore: Mr. Forbes interviewed with Senior Manager  Whitesel, "[b]ut at the end of the day, it was my decision" to hire Mr. Forbes; she discussed with Senior Manager  Whitesel "the pros and cons" of Mr. Forbes and another candidate; "[Senior Manager Whitesel] then said it was my decision"; and she has "never – in all the years [she's] been at Vanguard in hiring people, been told by my boss that I couldn't hire the person I though was appropriate for the role." ECF Doc. No. 23–3, Appx. 130A, N.T. P. Talarico at 72–75. This is consistent with Senior Manager Whitesel's sworn testimony: his meeting with Mr. Forbes before his hiring "was part of the interview process"; he "didn't really make the decision around his hiring. So, I was part of the interview process for the candidates and provided my thoughts on, on his relative fits, strengths, weaknesses, those types of things, to … provide counsel to [Manager Talarico]. I didn't see any, any red flags to prevent his hiring, but it wasn't my decision." ECF Doc. No. 34–2, Appx. 426, N.T. R. Whitesel at 102–104. Mr. D'Angelo does not point to evidence to dispute Manager Talarico's or Senior Manager Whitesel's sworn testimony. Instead, he

mischaracterizes Manager Talarico's and Senior Manager Whitesel's testimony in an effort to create a fact issue where none exists.

[45] ECF Doc. No. 23–3, Appx. 220A–226A.

[46] ECF Doc. No. 1, ¶ 18.

[47] 29 U.S.C. § 621, *et. seq.*; ECF Doc. No. 1.

[48] ECF Doc. No. 23–3, Appx. 111A, N.T. Z.M. at 12.

[49] *Id.*, Appx. 91A–93A, N.T. K.D. at 16, 22.

[50] *Id.*, Appx. 100A, N.T. K.D. at 51.

[51] *Id.*, Appx. 122A, N.T. A.R. at 87-88.

[52] *Id.*, Appx. 116A, N.T. A.R. at 49–50.

[53] *Id.*, Appx. 104A, N.T. C.G. at 90–91.

[54] *Id.*, Appx. 151A-152A, N.T. M.Z. at 10–12, 17–20.

[55] *Id.*, Appx. 56A-57A, Declaration of M.J.

[56] ECF Doc. No. 23–2, Vanguard SUMF ¶ 59.

[57] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[58] ECF Doc. No. 23. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would

enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[59] Mr. D'Angelo argues we cannot consider on summary judgment Specialist Boschi's interview notes because they are "permeated with hearsay, double hearsay, and triple hearsay statements." ECF Doc. No. 37 at 6. Vanguard responds Specialist Boschi's notes are not hearsay because they are not offered for their truth, and, even if it offered for the truth of the matter asserted, it is a business record maintained in the ordinary course by Vanguard's Human Resources. Fed. R. Evid. 803(6)(b). Our Court of Appeals instructs "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223, n.2 (3d Cir. 2000) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)). Specialist Boschi and the employees she interviewed are available to testify. *See* ECF Doc. No. 23–1 at 5, n. 4; ECF Doc. No. 38 at 3, n. 2; ECF Doc. No. 38–1, Vanguard Reply to D'Angelo response to SUMF ¶ 22.

[60] *Hennessey v. Dollar Bank, FSB*, 833 F. App'x 961, 965 (3d Cir. 2020) (quoting *Abramson v. Williams Paterson College of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001)).

[61] *Hennessey,* 833 F. App'x at 965 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

[62] *Id.*, 833 F. App'x at 966 (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995)). *See also Capps v. Mondelez Global, LLC*, 847 F.3d 144, 154, n. 9 (3d Cir. 2017) (analyzing employer's legitimate, non-discriminatory reason for employee's discharge in the FMLA case).

[63] 29 U.S.C. § 621, *et seq.*

[64] 42 U.S.C. §2000e–2.

[65] 29 U.S.C. §§ 623(a)(1), 631(a) (emphasis added).

[66]  557 U.S. 167 (2009).

[67] *Id. at* 177–78.

[68] *Gross,* 557 U.S. at 177, 180; *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76–77 (3d Cir. 2018); *Smith v. Allentown*, 589 F.3d 684, 690–91 (3d Cir. 2009).

[69] *Gross*, 557 U.S. at 176 (emphasis added).

[70] *Id.* at 177 (emphasis added).

[71] *See* ECF Doc. No. 37 at 15, citing *Miller v. Cigna Corp.*, 47 F.3d 586 (3d Cir. 1995). We note Mr. D'Angelo's counsel simply referenced "*Miller*" without providing the full case name or case citation. We found *Miller v. Cigna Corp.* which appears to be the case counsel intended to cite. But it is no longer the law after the Supreme Court's 2009 decision in *Gross*. And, in fact, when retrieving the *Miller* case on Westlaw, there is a warning alerting the reader of an overruling risk by *Gross*.

[72] Mr. D'Angelo's counsel represents employees in this Court in dozens of cases. He either knows this standard and is knowingly misrepresenting the law or he is not prepared to represent employees in age discrimination cases in federal court.

[73] *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 152 (3d Cir. 2016); *Smith v. City of Allentown*, 589 F.3d 684, 689–92 (3d Cir. 2009).

[74] *See* ECF Doc. No. 37 at 14.

[75] *Palmer*, 662 F. App'x at 150.

[76] *Id.* (emphasis in original) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994)). *See also Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 587–88 (E.D. Pa. 2013) (discussing post-*Gross* standard for proving age-based discrimination by direct evidence).

[77] *Cellucci*, 987 F. Supp. 2d at 587.

[78] *See* ECF Doc. No. 37 at 14.

[79] Again, Senior Manager Whitesel denies making these comments but Vanguard, for purposes of its motion, accepts as true Mr. D'Angelo's account of his meeting with Senior Manager Whitesel.

[80] *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at * 16 (E.D. Pa. Sept. 4, 2015) aff'd 645 F. App'x 161 (3d Cir. 2016) (citing *Ezold v. Wolf, Block, Schorr, and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)).

[81] *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338–39 (3d Cir. 2002) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995)).

[82] *Palmer*, 662 F. App'x at 150–51.

[83] *Glanzman v. Metro. Mgmt. Corp.*, 391 F. 3d 506, 513 (3d Cir. 2004) (questions about retirement plans are not direct evidence of age discrimination "and could just as easily be explained by a desire on [employer's] part to do some long-term planning.").

[84] *Resch v. Sugarhouse HSP Gaming, L.P.*, No. 21-42, 2022 WL 4120280, at * 4 (E.D. Pa. Sept. 9, 2022) (granting summary judgment to employer in age discrimination case finding supervisors discussed terminating plaintiff including the statement "I felt sorry for the guy so I gave him a

shot. Sometimes I have empathy for people who are getting older and ask for a shot. …" is not direct evidence of age discrimination).

[85] *Cellucci*, 987 F. Supp. 2d at 587–88 (granting summary judgment to employer finding comments plaintiff probably had a "fat 401(k) and pension," the business "needs new younger faces," and questions about retirement, are not direct evidence of age-based animus because there is no causal connection between the alleged bias and the adverse employment action).

[86] *Lewis v. Temple Univ. Health Sys.*, No. 13-3527, 2015 WL 1379898, at *9–*10 (E.D. Pa. Mar. 26, 2015) (granting summary judgment to employer finding supervisor's comments regarding his desire to hire younger workers is not direct evidence of age-based animus where there is no evidence of a connection between the remarks and the adverse employment action).

[87] *Garcia v. Newtown Twp*., 483 F. App'x 697, 704 (3d Cir. 2012).

[88] *Id.*, 482 F. App'x at 704 (citing *Fuentes*, 32 F.3d at 767).

[89] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

[90] *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425–26 (3d Cir. 2013) (citing *Smith*, 589 F.3d at 689).

[91] *Id.*, at 426 (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001)).

[92] *Id.* (cleaned up).

[93] *Id.* (citations omitted).

[94] *Id.* (citations omitted).

[95] *Fuentes*, 32 F.3d at 764. In our earlier analysis, we determined there is no direct evidence of discrimination and we are now focused only on circumstantial evidence.

[96] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F. 3d at 765).

[97] 511 F. Supp. 3d 623 (E.D. Pa. 2021).

[98] *Id.* at 643, n. 92 (citing *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80, n.3 (3d Cir. 2019)).

[99] *Id.*

[100] *Id.* at 645, n. 99 (quoting *Jeffrey v. Thomas Jefferson Univ. Hosp. Inc.*, No. 17-0531, 2019 WL 2122989, at *5 (E.D. Pa. May 14, 2019)).

[101] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F. 3d at 765).

---

[102] *Bloch v. Mack Trucks, Inc.*, 240 F. Supp. 3d 365, 374 (E.D. Pa. 2017) (quoting *Furru v. Vanguard Grp., Inc.*, No. 14–5034, 2015 WL 5179407 (E.D. Pa. Sept. 4, 2015)).

[103] We hasten to add comparator evidence is often used to show pretext; the employer treated other, similarly situated people **not** of the plaintiff employee's protected class more favorably. *Fuentes*, 32 F.3d at 765. We assume Mr. D'Angelo is attempting to show pretext by arguing Vanguard treated Senior Manager Whitesel and Manager Talarico more favorably by not terminating them for violations of the company's Fair Treatment and Professional Conduct policies. There are two fatal problems with this argument. First, there is no evidence Senior Manager Whitesel or Manager Talarico violated Vanguard's Fair Treatment and Professional Conduct policies. Second, Senior Manager Whitesel, at age forty-four, is in the same protected class as Mr. D'Angelo and we are not told Manager Talarico's age so we cannot determine whether she is within the age-protected class.

[104] We have no idea how such a charge against Manager Talarico helps Mr. D'Angelo's cause where he concedes Manager Talarico had no involvement with Specialist Boschi's investigation.

[105] *Block*, 240 F. Supp. 3d at 374.

[106] ECF Doc. No. 33–1, D'Angelo response to SUMF ¶¶ 67, 78.

[107] ECF Doc. No. 36-10, Appx. 892A.

[108] *Id.*, Appx. 893A.

[109] *Id.*, Appx. 895A.

[110] *Id.*, Appx 896A.

[111] *Id.*, Appx 897A.