## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOHN J. D'ANGELO | : CIVIL ACTION |
| | : |
| v. | : NO. 21-4813 |
| | : |
| VANGUARD GROUP, INC. | : |

## **MEMORANDUM**

**KEARNEY, J.**                                                    **January 23, 2023**

The Supreme Court has long required appeals from our final orders to be filed within thirty days. But life happens and sometimes parties can miss the deadline for good and verified reasons. We may then consider extending the thirty day deadline if we find excusable neglect in failing to timely appeal. The tardy party must show more than a convenient excuse incapable of verification. We do not extend jurisdictional deadlines without credible reasons precluding a timely filing.

We today deny a motion to extend the appeal period. The tardy counsel knew the correct date for weeks and highlighted the correct last-possible date in a case review session five days before the last-possible due date. He and his paralegal reached the known due date and then checked the Google calendar which somehow changed the appeal date to the next day. They decided to not appeal on any of the thirty days after the challenged Order including on the long known due date relying entirely on a Google calendar entry. They decided to wait until the last day represented on their Google calendar. The Court of Appeals noted the untimely filing. Counsel first blamed a computer glitch with his Google calendar. He then researched and dropped the computer glitch theory. He offered no screen shot of the incorrect calendar entry. He offered no reason why he could not track changes to the Google calendar consistent with its policies. Counsel then appeared at our evidentiary hearing and suggested his new paralegal changed the date on the Google calendar for unknown reasons sometime over the weekend before the filing date. The new

paralegal (still working for counsel) credibly testified she did not do so and never changed a date on a lawyer's calendar.

We are left with no credible excuse for failing to timely file the appeal within the mandated thirty days. Counsel ignored his own notes and his repeated direction to his inexperienced paralegals. He instead claims to have relied on a Google calendar entry with the incorrect date. We held an evidentiary hearing and evaluated the credibility of testimony from counsel and his two paralegals. The counsel does not offer a credible excuse. He missed the date. We have no basis to extend the jurisdictional deadline. We enter findings of fact following the evidentiary hearing. We must deny counsel's motion to extend the appeal deadline.

## I.    Findings of Fact

1.    John J. D'Angelo hired the Derek Smith Law Group to represent him seeking damages after his long-time employer fired him in March 2021. Mr. D'Angelo believed his employer fired him because of his age.

2.    The Derek Smith Law Group assigned Mr. D'Angelo's representation to Seth D. Carson, Esquire.

3.    Attorney Carson filed age discrimination charges with the Equal Employment Opportunity Commission on Mr. D'Angelo's behalf.

4.    Attorney Carson then filed this case on November 1, 2021.

5.    The parties engaged in discovery closing on September 15, 2022.

6.    The employer timely moved for summary judgment. We granted Attorney Carson's two requests for extensions to answer the summary judgment motion.

7.    We granted Defendant's Motion for summary judgment in a November 10, 2022 Order referencing a thirty-page accompanying Opinion detailing the basis for our Order.

2

8.      Attorney Carson understood the Supreme Court, through the Federal Rules of Appellate Procedure, required him to file a Notice of appeal within thirty days of our November 10, 2022 Order, or on or before December 10, 2022.

9.      Attorney Carson and his client decided to appeal our November 10, 2022 Order on or before November 17, 2022.

10.     Attorney Carson's admittedly often waits until the last day to file a time-sensitive document, including a one-page, nearly pro forma, Notice of appeal. He offers no reason for often delaying until the last minute other than he is busy.

11.     Attorney Carson maintains a Google calendar to manage his claimed busy professional obligations. He grants access to his Google calendar to only: the two paralegals assigned to his cases, a supervising paralegal, and the supervising partner (Derek Smith, Esquire) of his law firm.

12.     Attorney Carson relied on his Google calendar to meet his professional obligations while working with a law student part-time paralegal (William) who began working with him in mid-November 2022 and a newly hired but more experienced paralegal (Juanita) who also began working with the Derek Smith Law Group in mid-November 2022.

13.     Attorney Carson met with the two new paralegals for their first case management review with him on the Wednesday before Thanksgiving, November 23, 2022 to address over fifty cases assigned to Attorney Carson.

14.     Neither paralegal had ever participated in a case review with Attorney Carson before the November 23, 2022 session.

3

15.     Attorney Carson's new paralegal Juanita typed a list of his over fifty cases before the November 23 case review session including noting a direction to "file appeal" from the November 10, 2022 Order.

16.     Attorney Carson and his two new paralegals spent between five to ten minutes talking just about Mr. D'Angelo's appeal, marking one of the longest discussions of cases during this session.

17.     Attorney Carson told his new paralegals November 23 is twelve days from the date of the November 10, 2022 Order.

18.     Attorney Carson directed his law student part-time paralegal William to calendar the appeal on the shared Google calendar to be filed on Monday, December 12, 2022, representing the first Monday after the end of the appeal period on Saturday, December 10, 2022.

19.     Attorney Carson did not produce a screen shot or other evidence of his Google calendar confirming the law student paralegal correctly entered the date of December 12, 2022 but instead relies solely on his say-so of directing everyone to understand the date of December 12, 2022 as the last day to appeal.

20.     Attorney Carson chooses to use a Google calendar which allows him the presumed benefits of, among other things, the ability to access "… the audit and investigation page to run searches related to Calendar log events. There you can review a record of actions to track changes to calendars, events, and subscriptions. You can also track the email notifications associated with these actions. This information is helpful when you troubleshoot issues or *when your users notice discrepancies or unexpected changes to their calendars, shared calendars, or specific calendar events.*"[1]

4

21.     Attorney Carson and his law student paralegal passed each other in the hall from time to time and reminded each other of the decision to appeal the November 10, 2022 Order.

22.     Attorney Carson next met in his office with his law student paralegal on Friday, December 2, 2022, nine days after his first meeting, to discuss certain cases. His full-time and also new paralegal, Juanita, did not attend this December 2 session.

23.     Attorney Carson could not recall if he looked in his Google calendar during the December 2, 2022 case review meeting with his law student paralegal.

24.     Attorney Carson did not adduce evidence he ever looked at the Google calendar to confirm a December 12, 2022 calendar date as he assumed his law student paralegal had done so.

25.     Attorney Carson, his law student paralegal William, and new paralegal Juanita met again on Wednesday, December 7, 2022, just five days before the appeal period expired (December 12) and discussed Mr. D'Angelo's appeal among his fifty or so cases.

26.     Attorney Carson handwrote notes of his November 23 and December 7 case review sessions with his two newly assigned paralegals.

27.     Attorney Carson confirmed he <u>double underscores</u> matters in his handwritten notes to confirm <u>his</u> responsibilities to do various things by certain dates on his assigned cases.

28.     Attorney Carson's handwritten notes from the December 7, 2022 case review session reflect he underscored "appeal filed by <u>12/12</u>" confirming he knew he needed to file an appeal of the November 10, 2022 Order by the following Monday – five days away.

29.     Attorney Carson's law student paralegal swore he checked the Google calendar on Friday, December 9, 2022 and saw the appeal due on the following Monday consistent with Attorney Carson's understanding of an appeal due by no later than December 12.

5

30.     On the date underscored, Monday, December 12, Attorney Carson and his paralegals worked in the office although they cannot describe what work they performed.

31.     Attorney Carson, his new paralegal Juanita and his law student part-time paralegal William do not keep time records of their work for Mr. D'Angelo or most other cases. None of them can describe their work product on any of the dates at issue.

32.     Attorney Carson swore he does not keep contemporaneous time records even though he practices in an area with fee-shifting because he has only had to file a fee petition once while representing a defendant.

33.     The Derek Smith Law Group does not provide a policy or direction to enter time records or access to the attorneys' computers.

34.     Attorney Carson and his law student paralegal swore they discussed the Notice of appeal on Monday, December 12.

35.     Attorney Carson relied entirely on a Google calendar even though he knew the appeal date of December 12.

36.      But on December 12, the Google calendar inexplicably identified the date of the Notice of appeal for December 13 notwithstanding at least three separate conversations and knowledge Attorney Carson needed to file the Notice of appeal by no later than December 12.

37.     Attorney Carson and his two paralegals swore they did not change the date on the Google calendar.

38.     Attorney Carson and his two paralegals also swore during our evidentiary hearing they knew of no computer glitch which would have changed the date from December 12 to December 13.

6

39. Attorney Carson knew he needed to file the Notice of appeal no later than December 12 but, for unknown incredible reasons, relied on the Google calendar entry on Monday, December 12 showing Notice of appeal due on December 13.

40. Attorney Carson has no explanation as to how a Google calendar would reference the wrong date when everyone identified the Notice of appeal date as December 12.

41. Attorney Carson's testimony is particularly incredible given he double underscored the date of the Notice of appeal of December 12 on December 7 and yet now claims he relied on a Google calendar on December 12 showing the date would be December 13.

42. Attorney Carson's testimony is not credible concerning this change of date.

43. Attorney Carson swore he did approximately twenty hours of research on how Google calendar would have changed the date automatically. He can offer no explanation.

44. Attorney Carson cannot explain how his Google calendar changed the appeal due date he knew since at least the November 23 case review session.

45. Google calendar allows the user to go back and check changed entries similar to track changes in a document to see who and when dates were changed. Attorney Carson never offered a screen shot of a date of the calendar notwithstanding repeatedly swearing to us the calendar showed a Notice of appeal date of December 12 on Friday, December 7, but then it explicably showed a Notice of appeal date of December 13 on the due date of Monday, December 12.

46. Attorney Carson could not explain why no one asked why the date changed.

47. Attorney Carson's law student paralegal came into work on Tuesday, December 13 and noted the obligation to file a Notice of appeal on December 13. He took care of some phone calls with clients and then alerted Attorney Carson of the need to file the Notice of appeal.

7

48.     Attorney Carson knew filing the Notice of appeal involves a relatively straightforward paragraph having seen it done before.

49.     But Attorney Carson's law student paralegal had never prepared a Notice of appeal and did not know how to do so.

50.     So Attorney Carson hovered over the paralegal's desk to prepare the Notice of appeal mid-day on December 13.

51.     They filed the Notice of appeal and expressed relief when the Court of Appeals accepted their filing shortly before 1:00 P.M. on December 13.[2]

52.     The Court of Appeals notified Attorney Carson and Defendant's counsel on December 21, 2022 of the untimely appeal. Our Court of Appeals granted the parties leave to file a written response within fourteen days as to why it should not dismiss the appeal as untimely.

53.     Attorney Carson then conferred with the firm's senior paralegal and his firm's senior partner Derek Smith as to what to do next.

54.     They decided not to hire a computer forensic consultant to determine what happened. They instead apparently reached the conclusion no computer glitch caused the error.

55.     Attorney Carson testified he thought maybe his newest paralegal Juanita changed the date on his shared Google calendar. He blames his paralegal for the possible error even though no one testified she ever entered dates on the Google calendar.

56.     And paralegal Juanita credibly swore before us she did not do so and has never changed the date on any attorney's calendar in her years of paralegal service both with her present service in the Derek Smith Law Group and in her earlier work as a paralegal.

57.     Paralegal Juanita provided credible testimony as a paralegal on this file in November and December 2022 and during our hearing in January 2023.

8

58.     Attorney Carson finally responded to the Court of Appeals at nearly midnight on the very last night afforded to him and only after Defendant filed its response to the December 21, 2022 Order from the Court of Appeals directing the parties to file a written response addressing its authority to consider the appeal. Attorney Carson first moved for an extension before us at 11:42 P.M. on the last day (ECF Doc. No. 44), and then filed his response to the Court of Appeals shortly before midnight.

59.     Attorney Carson swore to us in his motion of a possible computer glitch. But he now claims he cannot find a basis to attribute his error to a computer glitch.

60.     Attorney Carson is not credible in his shifting of blame from an undefined Google calendar error which he never double-checked to then blaming his newly hired paralegal who credibly swore she never changed a calendar date.

61.     Attorney Carson is not credible in claiming he relied upon his Google calendar as the final word on when an appeal is due especially when he double underscored the correct appeal date in his handwritten notes five days earlier.

62.     Attorney Carson is not credible in claiming he researched (for approximately twenty hours) how to find whether anyone altered the Google calendar when the Google website unequivocally directs how the user can track changes to calendar entries and then Attorney Carson neither hired a computer forensic expert nor showed us a screen shot of a December 13 appeal date.

63.     Attorney Carson is not credible when he claims he invested time and effort in trying to understand what happened but does not maintain time records of his work nor does he require his paralegals to prepare time records especially when his practice is largely focused on statutory fee-shifting matters like the age discrimination issues presented by his client.

64.     Attorney Carson is not credible when he shifts blame to others when neither he nor his law firm operate under a form of written directions or guidelines on calendar entry, document retention, billing records, or supervisory obligations for newly hired paralegals.

## II.     Conclusion of Law

65.     The failure to timely file a notice of appeal after knowing the date for more than three weeks for incredible, shifting reasons unsupported by evidence is not excusable neglect allowing us to extend the mandatory thirty-day filing period for an appeal.

## III.     Analysis

We consider whether we can grant Attorney Carson's motion for an extension of time because his error can be attributed to excusable neglect. We appreciate lawyers can err. But this error cannot be attributed to excusable neglect. We find no basis to extend this jurisdictional deadline after an extensive evidentiary hearing.

The Supreme Court's time limits in Federal Rule of Appellate Procedure 4(a)(1) are mandatory and jurisdictional.[3] But we can extend the time. The Supreme Court allows us to extend the time to file an appeal only if the party moves to do so within thirty days of the deadline and the party can show "excusable neglect or good cause."[4] Neither party argues the extension is allowable because of good cause. Attorney Carson instead argues his last-day reliance on the unsubstantiated Google calendar error allegedly causing the delay constitutes excusable neglect.

Our finding of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[5] Our review is not limited "strictly to omissions caused by circumstances beyond the control of the [tardy party]."[6] We are guided by both the Supreme Court and our Court of Appeals as to the meaning of excusable neglect.

10

Thirty-five years ago, in *Consolidated Freightways Corp. of Delaware v. Larson,* our Court of Appeals refused to approve a *per se* rule allowing excusable neglect only when the moving party had no control over the circumstances of the mistake.[7] Our Court of Appeals instructs us to consider excusable neglect on a case-by-case basis and, "to judiciously apply the standard," we must at a minimum "make findings as to the reasons underlying counsel's inadvertence."[8] Our Court of Appeals noted a "qualitative distinction between inadvertence which occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence."[9] Our Court of Appeals conceded it is impossible, and improper, to create an exhaustive list of factors to weigh and balance. But it suggested, at minimum, we should consider: "(1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied the inadvertence resulted despite counsel's substantial good faith efforts toward compliance."[10]

Five years after our Court of Appeals' decision in *Consolidated*, the Supreme Court confronted excusable neglect in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*. The Court in *Pioneer* weighed several factors which, while neither exhaustive nor determinative, require us to evaluate when deciding whether a delay is caused by excusable neglect: (1) whether the other party would be prejudiced by an extension; (2) the length of the delay and its effect on the judicial proceedings; (3) the reason for the delay including whether the tardy party had reasonable control over it; and (4) whether the tardy party acted in good faith.[11]

11

Since *Pioneer*, our Court of Appeals consistently applies its factors in reviewing a district court's finding of excusable neglect under Federal Rule of Appellate Procedure 4(a)(5). Our Court of Appeals' decision in *Ragguette v. Premier Wines & Spirits* informs our review.[12] Mr. Ragguette sued his employer claiming employment discrimination. Judge Savage granted summary judgment in favor of Mr. Ragguette's employer.[13] Mr. Ragguette's counsel failed to file a notice of appeal within thirty days of the summary judgment order. Mr. Ragguette moved for an order granting an extension of time to file a notice of appeal under Rule of Appellate Procedure 4(a)(5) approximately thirty days later, arguing his attorney's failure to file a timely notice of appeal constitutes excusable neglect.[14]

Mr. Ragguette and his counsel explained the reasons justifying excusable neglect: his counsel "annotated" the summary judgment memorandum opinion "to be used to draft the notice of appeal" and produced a screen shot showing the law firm scanned into "the appeals file" the annotated summary judgment memorandum six days after the entry of summary judgment.[15] Mr. Ragguette's counsel then had another trial and mediation and, in her absence, her firm did not file the notice of appeal within the thirty-day period.[16] Counsel attributed the disconnect in her annotation of the summary judgment memorandum and the timely filing of the notice of appeal to a "mental lapse and [her] fail[ure] to realize [she] was working with my relatively new motion attorney and not my former associate and partner of over 11 years who would have correctly interpreted my notes and automatically calendared and drafted a notice of appeal without the need of a specific task."[17] Mr. Ragguette's counsel further explained she intended to "issue a task" to file a notice of appeal and "reasonably thought [she] had done so" but she either "didn't send the task or didn't complete the procedure as no task was generated by the computer" and "honestly believed the notice of appeal was filed in accordance with her annotations …"[18]

12

Our Court of Appeals first applied *Pioneer's* "reason for delay" factor.[19] It focused on the "reason for the delay" factor as "strongly weigh[ing] against any finding of excusable neglect" and then addressed the remaining *Pioneer* factors.[20] Our Court of Appeals found attorney inadvertence did not constitute excusable neglect. Mr. Ragguette's attorney's failure to "complete an additional step in the computer process in·her office" resulting in "staff never receiv[ing] instructions to perfect an appeal" is not excusable neglect.[21] Addressing counsel's explanation for her failure to perfect the appeal, our Court of Appeals concluded "a reasonably competent attorney would have exercised more supervision and control over a purportedly new and inexperienced subordinate" and should have, "at the very least," "have done more than make a number of vague annotations … and should have anticipated that a relatively new employee would need more direction."[22] Our Court of Appeals voiced its particular concern counsel "essentially and rather conveniently sought to shift at least some of the blame from herself to another person …" and her failure to follow the firm's usual practices of creating a "computer task."[23]

Our Court of Appeals further found a busy caseload generally does not constitute a basis for finding excusable neglect and counsel's failure to exercise reasonable diligence in uncovering the fact no notice of appeal had been filed and bringing the mistake to the attention of the opposing party and the district court is not reasonably diligent.[24] And our Court of Appeals, relying on earlier precedent, rejected the notion Rule 4(a)(5) "provides an absolute 30 day grace period" and "excusable neglect must be shown up to the actual time the motion to extend is filed."[25] It is "not overly burdensome to require a putative appellant, who has already missed the 30 day … mandatory appeal date of Rule 4(a)(1) because of 'excusable neglect,' to file immediately a Rule 4(a)(5) motion to extend when the excuse no longer exists."[26] In Mr. Ragguette's case, our Court of Appeals found a reasonably diligent attorney could have and should have discovered no notice

13

of appeal had been filed based on several motions filed by opposing counsel, the absence of ECF notices including a notice indicating the filing of an appeal, and communications from the Clerk of the Circuit.[27] After determining the proffered "reasons for delay" did not support excusable neglect, our Court of Appeals applied the remaining *Pioneer* factors and concluded they provided "only minimal support" for a finding of excusable neglect and failed to overcome the weight of the "reason for delay" factor.[28]

The conduct of Mr. Ragguette's counsel is similar to counsel's conduct here: Attorney Carson relied on new paralegals he failed to properly supervise, attributed at least some of the disconnect here to his busy caseload, cannot explain how he knew the latest appeal date of December 12 but yet filed the appeal a day late only after paralegal William brought the date to his attention, and shifted at least some of the blame to paralegal Juanita. Our Court of Appeals in *Ragguette* found this conduct does not constitute excusable neglect. We see no basis to depart from the lessons in *Ragguette*.

Other Courts of Appeals also place heightened import on *Pioneer's* "reason for delay" factor.[29] For example, the United States Court of Appeals for the Fourth Circuit explained the first and second factors will generally favor the moving party because of the Supreme Court's time limits in Federal Rule of Appellate Procedure 4(a)(5) "necessarily minimize the extent of any prejudice and delay" and the fourth factor is rarely material, leaving the third *Pioneer* factor — reason for delay — as "critical" and the "most important to the excusable neglect inquiry."[30] The United States Court of Appeals for the Eighth Circuit held "[t]he four *Pioneer* factors do not carry equal weight" and "the reason for delay is the most important."[31] The United States Court of Appeals for the First Circuit likewise considers reason for the delay the "most important" of the *Pioneer* factors.[32] The Court of Appeals for the Second Circuit found while the three other factors

14

"usually weigh in favor of the party seeking the extension, [it] and other circuits have focused on the [reason for delay] factor . . . ."[33]

We agree the reason for the delay is our primary consideration based on our fact findings today. We cannot find the employer is prejudiced. A party is prejudiced when, for example, the employer "lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion."[34] We do not face this issue. The one-day delay and the subsequent fourteen-day delay in moving to extend do not significantly impact the judicial proceeding. There is no basis to find Attorney Carson acted in bad faith in delaying. He erred and seemingly forgot to appeal on the last possible date after confirming he knew the date for weeks. He relied on a Google calendar rather than his own underscored notes and reminders from his paralegals.

Attorney Carson first blamed his error on a possible computer glitch in the Google calendar software in his written motion. He changed his position during our evidentiary hearing when conceding he could not find a basis to argue a computer glitch. He offered no forensic review, screen shot of the calendar, or explain why he could not follow the Google calendar directions to review changes to his shared calendar. He then suggested his new paralegal may have changed the date on the Google calendar over the weekend of December 10-11, 2022 when she credibly swore she never changed a calendar entry in her years of paralegal experience. We find no basis to blame the new paralegal for changing the date over the weekend.

The issue then becomes whether a failure to timely appeal is excusable neglect based on two different reasons both of which lack credibility after an evidentiary hearing. We are guided by judicial review of employee mistakes in setting a calendar and computer errors causing a delay.

In *Indemnity Ins. Co. of North America v. Electrolux Home Products, Inc.*, the tardy party failed to timely file an appeal because of a computer error.[35] Judge Surrick admonished the tardy

15

party's counsel for "blaming computer software for the error."[36] But Judge Surrick found a computer error "is a plausible explanation for the delay, and would reflect neglect that would be excusable."[37] Judge Surrick ultimately found the delay resulted from excusable neglect after weighing the Supreme Court's factors.[38] In *Lee v. Safeway, Inc.*, Judge Bennet found excusable neglect where "a series of well-documented computer glitches . . ." caused a delay.[39] Judge Bennet found no evidence of willful blindness toward the computer issues or carelessness in the tardy party's management of its case.[40] Judge Bennet also placed special emphasis on the "extensive documentation" the tardy party provided to explain the technical issue.[41]

Attorney Carson offers no evidence to explain the technical issue. We considered granting Attorney Carson leave to hire a computer forensic expert but, as Attorney Carson told us, the glitch would be on the Google platform and not through his laptop. But he offers no reason for failing to produce a screen shot confirming the mistaken date on the calendar or for failing to track possible changes to his shared calendar through the remedies detailed by Google. His failure to adduce this evidence suggests the calendar never reported the correct date although Attorney Carson knew the correct December 12 date for weeks and underscored his filing obligation just five days earlier in his handwritten notes from the December 7 case review session. We cannot find a plausible explanation based on a computer error like Judge Surrick found.

Attorney Carson inexplicably relied on a computer calendar entry when he knew the correct date. The Court of Appeals for the Fourth Circuit found no excusable neglect when a tardy party completely relied on a computer application.[42] In *Symbionics Inc. v. Ortlieb*, the tardy party miscalculated the due date for filing an appeal because of a mistake in using Microsoft Windows Calendar.[43] Despite finding (as we do) no prejudice to the opposing side, a limited delay, and no bad faith, the Court of Appeals held the judge abused his discretion in finding the error constituted

16

excusable neglect.[44] The Court of Appeals found "[c]ounsel's total dependence on a computer application" to be precisely the type of negligence they have consistently refused to excuse.[45]

We are also guided by our Court of Appeals direction in *Doe v. 9197-5904 Quebec, Inc.* [46] Judge Beetlestone dismissed an appeal from a bankruptcy decision because Quebec, Inc. failed to timely file a designation of portions of the bankruptcy record. Quebec blamed the delay in filing on erroneously calendaring the deadline.[47] Quebec eventually filed the designation and moved for post-judgment relief. Judge Beetlestone, following direction from our Court of Appeals, found Quebec's actions did not constitute excusable neglect.[48] Our Court of Appeals affirmed, agreeing the counsel's erroneous calendaring of the deadline could have been avoided through proper oversight.[49]

We are compelled to reach the same conclusion after applying our Court of Appeals' factors first articulated in *Consolidated* and the Supreme Court's factors in *Pioneer*. Our Court of Appeals directs we consider whether the provided reason reflects some easily manufactured excuse which would be unverifiable by the court.[50] An unexplained glitch causing the date for filing to be changed is the quintessential easily manufactured excuse. As an illustrative example for this factor, our Court of Appeals in *Consolidated* cites reasoning from the Court of Appeals for the First Circuit in which the court overruled the district court judge's finding of excusable neglect where a secretary's mistake in entering the filing date caused the delay.[51] And we face a much different situation than Judge Green faced in *Travelers Indemnity Co. v. Greenfield*, when he considered a late appeal caused by a party's counsel incorrectly marking his calendar.[52] Judge Green acknowledged the similarity between the case before him and the one presented in *Consolidated*.[53] But Judge Green found our Court of Appeals in *Consolidated* specifically warns against per se rules.[54] Judge Green did not consider the similarities between the two cases dispositive and instead

17

found the mistake to be excusable neglect.[55] Judge Green found while mistakes in diary entries *may* constitute a conveniently manufactured and unverifiable excuse, the tardy party can refute this by providing evidence which verifies it.[56] In *Travelers Indemnity Co.*, the tardy counsel adduced evidence in the form of diary reproductions which proved the tardy party actually made the mistake and did not manufacture it after the fact.[57] Unlike the tardy party in *Travelers Indemnity Co.*, Attorney Carson knew the correct date, but an unexplained event intervened and switched the date, causing the delay. Also, and unlike the tardy party before Judge Bennet in *Lee v. Safeway, Inc.* who provided extensive technical documentation, Attorney Carson adduced no evidence to support or explain the change in the calendared date. A simple mistake can be explained, and its existence can be proven. This glitch or blaming a paralegal who credibly denies changing the date on the other hand is just the sort of "easily manufactured excuse" envisioned by our Court of Appeals in *Consolidated.*

Our Court of Appeals' remaining factors in *Consolidated* have little applicability to Attorney Carson's excuse. The first factor asks whether the mistake resulted from professional incompetence, such as misunderstanding a rule of procedure. This mistake is not the result of any misunderstanding of procedural rules. Attorney Carson repeatedly swore (and his handwritten notes confirm) he understood Federal Rule of Appellate Procedure 4(a)(1) and its thirty-day limit to file an appeal. The third factor, whether the tardiness resulted from counsel's failure to provide for a readily foreseeable consequence, is also not applicable. Though possibly avoidable and surely unfortunate, a mistake in setting a date in a calendar, whether by human error or computer glitch, is not unforeseeable. The fourth factor considers whether the inadvertence reflects a complete lack of diligence. The available evidence points to a general display of diligence before December 9. Mr. D'Angelo's counsel held several meetings to consider the appeal. But we find no credible

18

diligence between the December 7 case review session and the due date of December 12. Attorney

Carson and his law student part-time paralegal decided to trust a calendar entry when they knew

the correct date. We cannot find diligence.

## IV. Conclusion

Attorney Carson and his firm do not adduce evidence supporting his professed reason for

the delay. His shifting reasons lack credibility. He decided to follow a Google calendar entry

knowing the correct date. A finding of excusable neglect under these facts would encourage late

filers to provide unverifiable excuses for their tardiness, whether to cover-up a change of heart in

filing an appeal or to hide a more egregious mistake which would not constitute excusable neglect.

We deny Attorney Carson's motion for an extension of time.

---

[1] https://support.google.com/a/answer/61105475?hl=en (last accessed January 18, 2023)(emphasis added).

[2] Attorney Carson swore to us he filed the Notice of appeal around Noon on December 13 when, as he later admitted, he filed it shortly before 1:00 P.M. While possibly not a material distinction given he could have filed the Notice of appeal any time on or before the due date, it is curious he did not understand the facts even when forced to explain how he could have missed the Notice of appeal date two weeks after the Court of Appeals alerted him to the untimely Notice.

[3] *Bowles v. Russel*, 551 U.S. 205, 209 (2007).

[4] Fed. R. App. P. 4(a)(5)(A).

[5] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (footnote omitted).

[6] *Id.* (footnote omitted).

[7] 827 F.2d 916, 919 (3d Cir. 1987).

[8] *Id.*

[9] *Id.*

[10] *Id.* (citations omitted).

19

[11] *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. While *Pioneer* involved excusable neglect in the context of bankruptcy rules, our Court of Appeals has since applied its holding to cases involving Federal Rule of Appellate Procedure 4(a)(5). *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 325 (3d Cir. 2012) ("We have applied *Pioneer*'s equitable approach in a variety of circumstances, including proceedings under Rule 4(a)(5).").

[12] 691 F.3d 315 (3d Cir. 2012).

[13] *Id.* at 317.

[14] *Id.* at 317–18.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 318.

[18] *Id.* at 318–19.

[19] *Id.* at 328.

[20] *Id.* at 331.

[21] *Id.* at 328–29.

[22] *Id.* at 328.

[23] *Id.* at 328–29.

[24] *Id.* at 329.

[25] *Id.* at 330 (citation omitted).

[26] *Id.* (citation omitted).

[27] *Id.* at 330–31.

[28] *Id.* at 331.

[29] *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011).

[30] *Id.*

[31] *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).

[32] *In re Sheedy*, 875 F.3d 740, 744 (1st Cir. 2017) (citations omitted).

---

[33] *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003). *See also Alexander v. Saul*, 5 F.4th 139, 148–49 and n. 5 (2d Cir. 2021) (affirming district court's finding plaintiff failed to establish excusable neglect based on the third *Pioneer* factor, explaining "[a]ffording dispositive weight to [the third] factor accords with our precedents, which have described the reason for the delay as the most important *Pioneer* factor") (collecting cases).

We are persuaded by reasoning from our colleagues applying the third *Pioneer* factor in these other circuits. For example, in *Losa v. Ghisolfi*, a paralegal attempted to file a notice of appeal from a final order of the district court one day after the thirty-day appeal period under Rule 4(a)(1) having miscalculated the thirty-day period. 484 F. Supp. 3d 268, 271 (E.D.N.C. 2020). Plaintiff moved for an extension of the appeal period claiming excusable neglect under Rule 4(a)(5). Focusing his analysis on the third *Pioneer* factor as the "most important," Judge Dever denied plaintiff's motion. *Id.* at 272–73. Judge Dever found "nothing explains why" plaintiff's paralegal waited until the day after the appeal period ran and "[g]iven the nearly ministerial nature of filing a one-page notice of appeal, the court would have expected counsel to seek to file a notice of appeal" earlier than the day after the appeal period ran. *Id.* at 273. Judge Dever concluded the paralegal's "calendaring error and poor handling of technical difficulties are 'administrative failure[s]' that are neither extraordinary nor unusual" and instead constitute neglect amounting to "precisely the sort of 'run-of-the-mill inattentiveness by counsel' that the Fourth Circuit 'has consistently declined to excuse.'" *Id.* (citations omitted). In *Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, a party filed a late reply brief because its counsel relied on an outdated set of court rules. No. 10-1062, 2011 WL 663202 at *1 (D. Kan. Feb. 14, 2011). Judge Crow found the prejudice, length of delay, and good faith factors all favored the tardy party. *Id.* But Judge Crow found no excusable neglect based solely on the tardy party's inadequate reason for the delay. *Id.* at *2.

[34] *Ragguette*, 691 F.3d at 331–32 (citation omitted).

[35] No. 10-4113, 2012 WL 1026967 (E.D. Pa. Mar. 26, 2012).

[36] *Id.* at *2.

[37] *Id.*

[38] *Id.* at *3.

[39] *Lee v. Safeway, Inc.*, No. 13-3476, 2014 WL 4926183 at *5 (D. Md. Sept. 30, 2014).

[40] *Id.* at *6.

[41] *Id.*

[42] *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216 (4th Cir. 2011).

[43] *Id.* at 218.

[44] *Id.* at 220.

[45] *Id.*

[46] *Doe v. 9197-5904 Quebec, Inc.,* 727 F. App'x 737(3d Cir. 2018).

[47] *Id.* at 738.

[48] *Id.*

[49] *Id.* at 739–40 ("The District Court aptly found that counsel's oversight could have been prevented through effective office procedures and reasonable diligence on the part of counsel in checking the bankruptcy docket") (citing *Ragguette,* 691 F.3d at 322, 326, 328–31); *see also Rose v. City of Utica,* No. 14-1256, 2018 WL 2041621 at *3 (N.D.N.Y. Apr. 18, 2018) ("[A] calendaring error by a party's attorney is rarely a basis for excusable neglect . . . .") (citations omitted).

[50] *Consolidated Freightways Corp. of De.,* 827 F.2d at 919.

[51] *Id.* (citing *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir. 1978)).

[52] No. 88-6845, 1990 WL 31911 (E.D. Pa. March 21, 1990).

[53] *Id.* at *1–*2.

[54] *Id.*

[55] *Id.* at *4.

[56] *Id.* at *3.

[57] *Id.*